189 P.2d 198

## STATE v. BRADY.

### No. 980.

Supreme Court of Arizona.

Jan. 26, 1948.

Dodd L. Greer, of Holbrook, and C. D. McCauley, of Winslow, for appellant.

John L. Sullivan, Atty. Gen., and Perry M. Ling, Asst. Atty. Gen., for appellee.

STANFORD, Chief Justice.

Information was filed in the Superior Court of Navajo County, Arizona, against the appellant Carl J. Brady charging him with the crime of rape upon the person of a girl of the age of ten years. The information charged that the offense occurred on or about the 6th day of December, 1946, at the parental home of the prosecuting witness.

The facts are that on said date the appellant took certain children to see a carnival and rodeo being conducted at the fairgrounds at Winslow, Arizona, among the children being this little girl, a younger sister and some other children. In the evening they were returned by the appellant to their home. The appellant seemed to be an intimate friend of both the mother of the child and her husband. The child was the issue of a former marriage. Upon arrival at the home, appellant went to the bathroom where the testimony shows that he, having taken a cathartic, was compelled to go. While he was there the prosecuting witness entered the bathroom and it was then the crime was committed. While they were still in the bathroom the parents returned. Further facts will develop when we refer to the testimony.

From the ten assignments of error claimed to have been committed by the trial court, we have selected for consideration the following, the disposition of which is determinative of all the appellant's points related in his pleadings:

"III. The Court erred in denying the challenges interposed by appellant to jurors W. M. Willis and Perry A. Baldwin, upon the ground and for the reason that each of said jurors, by their answers, disclosed their disqualification, to serve as fair and impartial jurors."

"IV. The Court erred in permitting the State, over appellant's objections, to prove by other witnesses the details of the complaint made by prosecuting witness to them, upon the ground and for the reason that the details of a complaint made by the victim of a rape are never admissible as primary evidence."

"V. The Court erred in denying defendant's motion for a mistrial, because of the misconduct of the County Attorney in placing his arms around prosecuting witness while sitting on the Clerk's desk and facing the jury."

"VI. Appellant did not secure a fair and impartial trial because of the misconduct of the County Attorney in continually addressing the prosecuting witness as 'honey'."

"VII. The Court erred in refusing to grant defendant's motion for mistrial because of the misconduct of the County Attorney in conversing with and handing the jury pictures of the bathroom in the Hutchinson home, where the alleged offense occurred, during the absence of the Court

and counsel for defendant, in violation of the Court's admonitions to the jury not to discuss the case or to permit anyone to discuss the case with them."

"VIII. The Court erred in giving State's instruction No. 6, upon the ground and for the reason that the jury was thereby misdirected as to the law, because said instruction incorrectly charged the jury that if an attempt is made to ravish a female under the age of eighteen years by a male not her husband, the felonious intent is present; and said instruction further misdirected the jury as to the law in that it charged the jury that it might find the defendant guilty of intent to rape although they found that the person of the female had not been touched."

"IX. The Court erred in refusing to charge the jury, at the request of appellant, upon the law of aggravated assault and simple assault because each thereof were included offenses in the crime of rape."

In respect to assignment No. III the testimony shows that jurors W. M. Willis and Perry A. Baldwin made statements which were the basis for unsuccessful challenges by appellant. As to Juror Willis, the following is the testimony:

"Q. Mr. Willis, are you conscious in any degree of having any prejudice against a man who is charged with this type of an offense? A. Yes, I think so.

"Q. The mere accusation in your mind creates some prejudice? A. It does.

"Q. And if you are chosen as a juror— as one of the trial jurors in this case, would you take that prejudice with you into the jury box? A. I think not; I would listen to the case and have an open mind about it.

"Q. But the fact that you do now entertain a prejudice generally against men who are accused of this type of offense, would that require either the State or the defendant to introduce evidence to remove such an impression? A. Yes—they—the fact the man was accused; there must be some evidence and if the evidence is sufficient that is all I want to hear.

"Q. Well, then, you appreciate the fact, Mr. Willis, that it is only by inquiry that either party may ascertain your state of mind with reference to a pending case that these questions were asked? A. Yes.

"Q. Now, then, do I understand you to say that the mere charge in any case creates a presumption of guilt? A. Yes.

"Q. And I will ask whether with that presumption, you would have a prejudice? A. Well, yes, as I said, I had a prejudice but my mind can be changed if there is sufficient evidence.

"Mr. Greer: Your Honor, that is directly opposed to the presumption of innocence.

"Mr. Nutting: I would like to ask Mr. Willis if he understands the defendant in any criminal case is presumed to be innocent until we prove him guilty beyond a reasonable doubt?

"The Juror: Yes.

"Mr. Nutting: And you would take that presumption with you?

"The Witness: Yes.

"Mr. Nutting: In this case do you give the benefit of that presumption of doubt the same as you would give—

"The Juror: Right.

"Mr. Nutting: And other unless the case by the evidence presented here was sufficient you would acquit the defendant?

"The Juror: Right.

"Mr. Nutting: You don't have any fixed opinion in your mind at this time?

"The Juror: No.

"Mr. Nutting: You will be guided solely by the evidence, is that right?

"The Juror: Right.

"Mr. Nutting: I think the juror is qualified.

"Mr. Greer: "Q. Now, Mr. Willis, disregarding your answers to the questions propounded by the county attorney, you haven't changed your mind; you would still be prejudiced to some degree, is that correct? A. I haven't convicted the man in my mind but I am convinced that he is not here just for nothing—I mean one or another will have to prove the man either guilty or innocent.

"Mr. Greer: We challenge the juror.

"The Court: Challenge denied.

"Mr. Greer: Then you are not what the law prescribes a fair and impartial juror, is that correct?

"Mr. Axline: Your honor, that would be calling for his opinion; it is not a proper form of question. You might ask him if he has a fixed opinion. It is not a proper form of question. We object to the form of the question.

"The Court: I believe that is a question for the court to decide; the objection is sustained.

"Mr. Greer: May I ask again, Mr. Willis, you still then are of the attitude that one or the other of the parties to this action should remove the opinion or prejudice which you now entertain by evidence? A. Yes.

"Mr. Greer: We again challenge the juror.

"The Court: You have stated that you have heard about the case. Have you formed or expressed an opinion as to the innocence or guilt of the defendant in the matter? A. No.

"The Court: You stated there was some prejudice existing because of the filing of the complaint—the information in this case; that state of mind—is that one if you were chosen as a juror you would carry into the jury room or is it a state of mind that could be changed or would you be guided by the evidence and the instructions of the court? A. I would be guided by the evidence submitted.

"The Court: The challenge is denied."

The testimony relative to the selection of juror Baldwin is as follows:

"Q. Now, Mr. Baldwin, are you conscious of any prejudice, however slight, against a person accused of an offense of this nature? A. Well, I think I, more or less, answered that question already; I am afraid I really would be, more or less. I am not biased against the man at all because I don't know him and I have never seen him before.

"Q. But you are biased or prejudiced against the offense, is that right? A. Yes.

"Q. And being so biased and prejudiced would naturally—would it effect you as a juror? A. I am afraid it would.

"Q. And you would go into the jury box, would you, and enter into deliberations as a juror still retaining that bias and prejudice? A. Well, I don't know how I could do otherwise.

"Q. Then you would be biased and prejudiced, is that correct? A. I wouldn't be biased and prejudiced against the man nor the particular case, but—

"Q. Well, let me ask you this, Mr. Baldwin, the fact that you are biased or prejudiced to some extent against this offense and that this man is on trial, is it not a fact that would create a bias or prejudice against him in your mind? A. Well, I guess it probably would, some, yes.

"Q. To some extent you would be prejudiced and biased? A. Yes, probably.

"Q. And that would be true regardless of who was on trial in this type of action? A. Yes, it would have nothing to do with the man.

"Q. But your prejudice and your bias against anyone who was charged with committing this type of offense would naturally be carried by you into the jury box against this defendant? A. I guess, yes; I don't know quite all the implications there.

"Mr. Greer: We challenge the juror.

"By Mr. Nutting: Q. You are not any more prejudiced in this case than you would be against any defendant who might be charged with this type of offense? A. Yes.

"By the Court: Mr. Baldwin, you hesitate to be a juror in this type of case? A. That's right; it is just the fact that it is just a hard type of a case for a' man in my situation, that's all.

"By the Court: Challenge denied."

At the close of examinations of these jurors the court asked questions: As to juror Willis:

"The Court: You stated there was some prejudice existing because of the filing of the complaint the information in this case; that state of mind—is that one if you were chosen as a juror you would carry into the jury room or is it a state of mind that could be changed or would you be guided by the evidence and the instructions of the court? A. I would be guided by the evidence submitted."

As to juror Baldwin:

"By the Court: Mr. Baldwin, you hesitate to be a juror in this type of case? A. That's right; it is just the fact that it is just a hard type of a case for a man in my situation, that's all."

In support of assignment No. III appellant cites, but does not quote, the case of Priestly v. State, 19 Ariz. 371, 171 P. 137, 138, 3 A.L.R. 1201, but from that case we quote as follows:

"This constitutional guaranty to persons accused of crime, that they shall have a fair trial by an impartial jury, inures to the benefit of every accused, irrespective of his guilt or condition in life. Whether the existence of a state of mind on the part of the juror is such as will prevent him from acting with entire impartiality is ordinarily a matter that must be left largely to the wise discretion of the trial court. But when the exercise of such discretion in a given cause appears to be clearly erroneous under well-settled principles of law, the appellate court is bound to interfere."

Our case of State v. Benham, 58 Ariz. 129, 118 P.2d 91, 94, is a case which treats on the subject of a challenge to a juror and we quote as follows:

"Specification two is directed at the court's denial of defendant's challenge to juror Doctor Smiley on the statutory ground that he 'has a state of mind in reference to the cause or to the defendant * * * which will prevent him from acting with impartiality.' Sec. 44-1313, Subdv. (j). The sum and substance of this juror's answers to questions put to him by the court and counsel is that he had formed an opinion about the case from what he had read in the newspapers but that such opinion was not fixed and had not been discussed except with his wife and some neighbors; that he had a prejudice against reckless driving; that he 'felt strongly' about 'the use of bad judgment, excessive speed or carelessness in driving.' When asked if he would convict defendant 'for the use of bad judgment,' he answered 'No, * * * I would not do it.' He said he did not know defendant nor the deceased in her lifetime and that he knew none of the attorneys. The only thing brought out to show him an improper juror, as we see it, was his admission to a prejudice against 'excessive speed and carelessness in driving,' and we do not think that a disqualification. That feeling, we think, is common to all good citizens as it is against theft, burglary, homicide and many other crimes against society. Because one deplores or hates these things is no evidence he is prejudiced against a person charged with their commission. He may hate a crime but have an open and unprejudiced mind as to the accused's guilt thereof. Doctor Smiley stated that he believed he could be a fair and impartial juror; that he could disabuse his mind of any fact read in the newspapers and try the case on the evidence presented and the instructions."

■ From the foregoing we can see clearly that these jurors were not disqualified and the appellant was not entitled to have the challenges granted. The trial court has the right to use its discretion in matters of this kind and we think there is no abuse shown in this case.

■ The 4th assignment of error relates to the matter of the prosecuting witness testifying as to the details of the complaint made against the defendant as related to the mother by the girl.

The appellant cites the cases of 44 Am. Jur., Rape, Sec. 84, p. 953; Territory v. Kirby, 3 Ariz. 288, 28 P. 1134; Elmer v. State, 20 Ariz. 170, 178 P. 28, 2 A.L.R. 1519; and Territory v. Maldonado, 9 N.M. 629, 58 P. 350.

As a rule, or test, on this subject we quote from 44 Am.Jur., Rape, Sec. 85, p. 955:

"Evidence that complaint was made by the prosecutrix shortly after the commission of the alleged crime is admitted not only as corroboration of the testimony of the prosecutrix, but as part of the res gestae, where it is made immediately after the outrage complained of. If the complaint constitutes part of the res gestae, not only the fact that complaint was made, but the complaint made, may be admitted. In other words, when the statements are part of the res gestae, they are excepted from the operation of the general rule and the details of the complaint may be given, re-gardless of whether the victim is a witness, on the theory that they are verbal acts connected with the transaction and calculated to illustrate its character. The admissible details may include evidence of the identity of the alleged ravisher."

The cases cited by appellant were ones where evidence of the complaint was not admitted as a part of the res gestae, but in the instant case the child ran from the bathroom about the time the mother and stepfather entered the house. Her younger sister was already in the house and when the girl ran from the bathroom to her mother she forthwith told her mother of her treatment by the appellant which made it definitely a part of the res gestae.

■ We will treat the 5th and 6th assignments of error together. They are that the court erred in denying appellant's motion for a mistrial because the county attorney placed his arms around the prosecuting witness while she was testifying; and that the appellant did not have a fair and impartial trial because the county attorney called the prosecuting witness "honey" while she was on the witness stand.

The appellant offers no law on this subject. It is sufficient for us to say that there was no prejudice to appellant's rights in that respect, and having observed the conduct complained of and heard the testimony we find that the court, observing what was done stated the following:

"The Court: What I remember to be a fact; while the court was inquiring into the

prosecutrix' knowledge of an oath, then she burst into tears; it was because of the court's inquiry. That was the reason she burst into tears. Thereafter, the County Attorney, I believe, put his hands on her shoulder and brought her towards the bench with the idea that the court instruct her further."

It is our opinion that this assignment of error does not merit our further attention because we think the conduct of the county attorney in doing what he did, and the court in allowing it to be done, was entirely proper under these circumstances when the child was of tender years and no prejudice resulted to the appellant by the conduct on the part of the county attorney.

As to the 7th assignment of error the appellant complains that "During the course of the trial, while the jury was seated in the box, in the absence of the Court and counsel for the defendant, the County Attorney conversed with the jury about the case and passed pictures to them of the bathroom in the home, where the alleged offense was committed." It appears from the testimony that the following occurred on this subject, that as the court was about to excuse the jury during a certain argument of a law point and after the court had admonished the jury, counsel for appellant made this statement:

"Mr. Greer: Before you do this, I am obliged to mention that during the absence of the court and of counsel for the defend-ant, the county attorney gave these pictures (Plaintiff's Exhibits No. 1 and No. 2) to the jury and they had them and were examining them when court convened.

"Mr. Nutting (County Attorney): One of the jurors asked to see them.

"The Court: I believe, Mr. Nutting, that is contrary to the court's instructions to them.

"Mr. Nutting: To examine the exhibits?

"The Court: They are not to talk or discuss this matter among themselves or with others.

"Mr. Nutting: They were in the box.

"The Court: Court was not in session."

Thereupon Mr. Greer, one of the counsel for the appellant, moved for a mistrial and the court denied the same, stating, "there was no prejudicial error which occurred but it is a little irregular."

In looking over the admonition given by the trial court in instances where a recess was taken, we find the following:

"The Court: Let's have the usual noon recess and the instructions I give you also applies to the jurors in the rear of the courtroom; that during the intermission until court reconvenes at 1:30 this afternoon, and until the case is finally submitted to you, you will not discuss this matter among yourselves or with others nor let anyone else or permit anyone else to discuss the matter in your presence, or are you to form or express an opinion in the matter until the cases is finally submitted to you."

There is nothing in the record to support appellant's claim of any conversation by the county attorney with the jury in handing to the jury the pictures referred to. We cannot find that any prejudical error under these circumstances could have resulted to the appellant. However, all officials concerned should be very careful about having anything to do with the jury while court is not in session.

■ Appellant by the 8th assignment of error complains of the court's action in giving the following instruction:

"* * * the Court instructs you that under the laws of this State and the information in this case the defendant may be found guilty of the crime of rape, or the crime of assault with intent to commit rape or not guilty as the facts and the evidence may warrant under the instructions given you by the Court.

"If you fail to find the defendant guilty of the crime of rape as defined to you, then you will determine whether the State has established beyond a reasonable doubt that the defendant is guilty of assault with intent to commit rape which is the second included offense in the charge of rape.

"Now the Court charges you that if sexual intercourse is attempted with a female under the age of 18 years, by an adult male not her husband, no matter whether it be with her consent or without it, the felonious intent is present on the part of the male. If such an attempt is accompanied by some act that can be fairly, according to human experience, characterized as having an immediate relation to and preparation on the bringing about a condition under which sexual intercourse could be accomplished, it is an assault with intent to commit rape. The felonious intent existing there need not be a touching of the person of the female.

"Therefore should you find from the evidence that the defendant is not guilty of the crime of rape but do find beyond a reasonable doubt that the defendant was at the time alleged in the information an adult male and not the husband of the said Mary Patricia Propps, and that the said Mary Patricia Proops was a female under the age of 18 years, and that the defendant at the time and place mentioned in the information attempted to have sexual intercourse with the said Mary Patricia Propps by some act that can be fairly, according to human experience, characterized as having an immediate relation to and preparation or the bringing about a condition under which sexual intercourse could be accomplished, no matter whether it be with the consent of the said Mary Patricia Propps or without it, then it would be your duty to find the defendant guilty of the crime of assault with intent to commit rape."

It is the claim of appellant that this instruction is not only a comment on the evidence "but charges the jury that where an adult male attempts an act of sexual intercourse with a female under the age of eight-

374

een years, not the wife of the accused, that the felonious intent is present upon the part of such male."

In this respect we quote from our case of Callaghan v. State, 17 Ariz. 529, 155 P. 308, 310:

"If sexual intercourse is attempted with a female under 18 years of age, no matter whether it be with her consent or without it, the felonious intent is present on the part of the male. If such an attempt is accompanied by some act 'that can be fairly, according to human experience, characterized as having an immediate relation to and preparation or the bringing about of a condition under which intercourse could be accomplished,' it is an assault with intent to commit rape. The felonious intent existing, there may not be a touching of the person of the female."

It is true that if sexual intercourse is attempted the intent is deemed to be present, and we find no prejudicial error by the court giving this instruction.

█ The 9th assignment of error is that the court erred in refusing to charge the jury, at the request of appellant, upon the law of aggravated assault and simple assault because each thereof was an included offense in the crime of rape. It seems as though the matters complained of in assignments 8 and 9 should have been handled together, but the reporter's transcript shows that after the bailiff was sworn to take charge of the jury and the jury had "filed out" appellant made the following objection and motion:

"Mr. Greer: The defendant objects to the giving of State's requested instruction No. 6 on the grounds and for the reason that it was presented to the court during the argument of counsel for defendant and upon the further grounds that it incorrectly states the law of assault with intent to rape, in that it excludes from the instruction any overt act and charges the jury that they may find the defendant guilty of assault with intent to commit rape without touching the person of the victim.

"In view of the giving of this instruction at the request of the state, the defendant now respectfully requests your honor to charge the jury that they may also convict the defendant, if they are satisfied from the evidence in the manner provided by law, of the offense of aggravated assault and likewise may convict the defendant of the offense of simple assault.

"The defendant was willing to have the case submitted upon the issue only of rape and had no information until the argument of defense counsel was half over that any other issue would be requested or submitted to the jury as an included offense.

"The Court: The record may show that the defendant, after the jury had retired to their room for deliberation, made a motion as heretofore set out in the record and that the record may further show that the motion to further instruct the jury on additional instructions is denied."

Our case of McDaniels v. State, 62 Ariz. 339, 158 P.2d 151, is where defendant Mc-Daniels was convicted of the crime of assault with a deadly weapon, which is a felony. One assignment of error which he presented was that the trial court failed to instruct the jury on the question of simple and aggravated assault. This court said:

"As to the matter of the simple assault.— The information necessarily charges a simple assault when it charges 'assault with a deadly weapon', but that alone is not sufficient to entitle the defendant to two forms of verdict because if, in this case, he is not guilty of the higher offense he is not guilty of simple assault. Where the proof goes to the higher crime, it is not error to refuse to instruct on the lesser or included offense."

From our review of the testimony it appears definitely that the proof goes to the higher offense of rape.

This court is of the opinion that in this charge of rape where the proof is as definite and certain as it is, there was no necessity of submitting an instruction on the question of aggravated assault and simple assault. The court did submit an instruction on the subject of assault with intent to commit rape, which we think is entirely proper.

As to the 1st, 2nd and 10th assignments of error we have carefully considered same but find no merit to them.

■ This is a case of statutory rape, where a female person under the age of eighteen years has been ravished; where she did not have to resist for the sovereign State of Arizona resists for all such persons, then there comes the trial by jury brought together by the same power and now resists for this child. But with all that, our careful perusal of the instructions to the jury and all the features of the case, including a reading of the testimony convinces us that the appellant was given a fair and impartial trial. The benefit of a reasonable doubt has been given to the appellant and the cautionary instruction in rape cases that "the crime of rape is an accusation which is easy to be made and hard to be proved and harder still to be defended by the party accused though he be ever so innocent" has been given the jury. We find no prejudicial error in the record.

Accordingly the judgment is affirmed.

LA PRADE and UDALL, JJ., concur.